IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2007 MAR 23  P 12: 51

CLERK _____
SO. DIST. OF GA.

PAUL MAXWELL DUCASSE,       )
                            )
        Petitioner,         )
                            )
    v.                      )        CV 306-009
                            )
MICHAEL V. PUGH, Warden,    )
                            )
        Respondent.         )

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

Petitioner, an inmate incarcerated at McRae Correctional Facility ("MCF")[1] in

McRae, Georgia, has filed a *pro se* petition under 28 U.S.C. § 2241 contesting the execution

of his sentence of confinement. Habeas petitions, and any supporting submissions, drafted

by *pro se* litigants must be liberally construed. Haines v. Kerner, 404 U.S. 519, 520-21

(1972) (*per curiam*); Robinson v. Wainwright, 387 F.2d 438, 441 (5th Cir. 1967). For the

reasons that follow, the Court **REPORTS** and **RECOMMENDS** that the petition be

**GRANTED** for the purpose of reconsideration of Petitioner's request for a *nunc pro tunc*

designation to state custody in accordance with this Opinion, 18 U.S.C. § 3621(b), and PS

5160.05, and that Petitioner's "Motion to Request Case Status" be **DENIED** as **MOOT** (doc.

---

[1]MCF is a private correctional facility operated by the Corrections Corporation of
America ("CCA") under a contract with the Bureau of Prisons.

no. 7).[2]  The Court also **REPORTS** and **RECOMMENDS** that, should the District Court

adopt this recommendation as its own opinion, Respondent should inform the Court within

**sixty (60) days** as to his compliance with this Opinion.

## I. BACKGROUND

A.    **Introduction**

In 1998 Petitioner was arrested by Georgia law enforcement authorities and charged

with drug trafficking.[3]  (Doc. no. 1, p. 2).  Petitioner was later indicted for illegally reentering

the United States in violation of 8 U.S.C. § 1326(a), and a writ of habeas corpus *ad*

*prosequendum* was issued on October 16, 1998, for his appearance in federal court on this

charge.  (Doc. no. 6, p. 5, Ex. 6).  Petitioner was convicted for illegally reentering the United

States, and on February 16, 1999, the Honorable Dudley H. Bowen, Jr., United States District

Judge, imposed a fifty-two (52) month sentence of imprisonment.  See United States v.

Ducasse, 1:98cr050, doc. no. 19 (S.D. Ga. Oct. 8, 1998).

In June 1999, after being returned to state custody, Petitioner was convicted on the

state drug trafficking charge and was sentenced to twenty-five (25) years of imprisonment

"concurrent to any sentence now being served."  (Doc. no. 1, p. 11; doc. no. 6, p. 6, Ex. 3).

Petitioner was paroled to federal custody from this state sentence on May 18, 2005, and

---

[2]Petitioner's "Motion to Request Case Status" is simply a request for information as to the current status of the present petition.  Petitioner should be aware that it is improper to request such "status reports" from the Court with regard to petitions, motions, or other filings.  Any such request should be directed to the Clerk of Court and, even then, status information will be limited to whether the materials were in fact properly docketed.

[3]The exact date of Petitioner's arrest is unclear.

2

arrived at MCF on June 22, 2005.  (See doc. no. 6, Exs. 1, 3).  The BOP has given Petitioner a projected release date of February 25, 2009.  (Id., Exs. 1, 2).

Petitioner is presently seeking a *nunc pro tunc* designation to state custody by the BOP such that, in effect, his federal sentence would have been running concurrently with his state sentence before he was actually taken into federal custody, thus allowing for an earlier release date.  (Doc. no. 1, p. 8).  Petitioner alleges that his case is particularly well-suited for such a designation because the state sentencing judge directed that his state and federal sentences should run concurrently.  (Id. at 9, 11).  Moreover, Petitioner states that the BOP's failure to even consider his request for a *nunc pro tunc* designation is improper.  (Id. at 10).  In response, Respondent argues that Petitioner has failed to exhaust administrative remedies and that his claim fails on the merits.  (Doc. no. 6).

## B.   The Administrative Process

The BOP's administrative remedy program is set forth in 28 C.F.R. § 542.10, *et seq*.  A similar, although not completely analogous, administrative remedy program is available to BOP inmates designated to MCF.  (See doc. no. 6, pp. 17-18).  If an inmate at MCF wishes to grieve a BOP related issue,[4] the proper procedure is set forth in a memorandum which Respondent distributes to the inmates.  (See id., Ex. 6, Attach A, Pugh Mem.).

To begin the administrative remedy program an inmate must first address his complaints to the MCF staff by utilizing MCF's grievance procedure.  (Id.).  The steps

---

[4]BOP related issues include those involving: "(1) classification, (2) designation, (3) sentence computation, (4) reduction in sentence, (5) removal or disallowance of good time, (6) decisions involving the taking of inmate property (does of include confiscation of contraband), and (7) issues directly involving BOP staff." (Doc. no. 6, Ex. 6, Attach A, Pugh Mem.).

3

attendant to MCF's grievance procedure include:  the CCA Inmate Request to Staff, CCA Informal Grievance Resolution, CCA Formal Grievance, and CCA Formal Grievance Appeal to the Warden.[5]  Id.  If the inmate is not satisfied with the response from the MCF staff, the inmate may appeal to the Privatization Administrator at the BOP's Central Office.  (Id.; see doc. no. 1, p. 21).  If the inmate's appeal is again denied, the inmate may appeal to the Office of the General Counsel, which responds via the National Appeals Administrator.  (Doc. no. 6, Ex. 6, Attach A, Pugh Mem.).

C.    **Petitioner's Utilization of the Administrative Process**

Petitioner submits documentation memorializing his utilization of the administrative process in an attempt to obtain a *nunc pro tunc* designation to state custody by the BOP. (See doc. no. 1, pp. 12-21).  Petitioner first contacted his unit manager at MCF, who forwarded a copy of his judgment and commitment order from the Superior Court of Richmond County to the MCF records supervisor, Ms. Charlene May.  (Id. at 12-13).  Ms. May determined that Petitioner desired to receive credit on his federal sentence for illegal re-entry to the United States based on the time he served in state custody pursuant to his state sentence for drug trafficking, a sentence which was imposed subsequent to his federal sentence.  (Id. at 14).  Ms. May directed Petitioner to contact Mr. John Gaither, the Regional Inmate Systems Administrator ("RISA"), and request a Barden procedure.  (Id.); see Barden v. Keohane, 921 F.2d 476, 483 (3d Cir. 1990) (holding that prisoner was entitled to have

---

[5]Even though this process includes an informal resolution requirement, 28 C.F.R. § 542.13(b) states that "[i]nmates in [contract Community Corrections Centers] are not required to attempt informal resolution . . . prior to submission to the Regional or Central Office."

BOP consider request for a *nunc pro tunc* designation to state custody and that the BOP should, when possible, solicit the opinion of the sentencing judge with respect to the request). Ms. May stated that she did not know how long the request to the federal judge for sentence credit would take, but that if the judge awarded such credit, Petitioner would be credited as soon as MCF was notified. (Doc. no. 1, p. 14).

Petitioner followed Ms. May's recommended course of action and contacted Mr. Gaither regarding the issue. (See id. at 15; doc. no. 6, Ex. 7). Mr. Gaither's response quoted BOP Program Statement ("PS") 5160.05: "A designation for concurrent service of sentence will be made only when it is consistent with the intent of the federal sentencing court or with the goals of the criminal justice system." (Doc. no. 1, p. 15; doc. no. 6, Exs. 7, 8, PS 5160.05(8)). "In the making the determination, if a designation for concurrent service may be appropriate (e.g., [T]he federal sentence is imposed first[,] and there is no order or recommendation regarding the service of the sentence in relationship to the yet to be imposed state term[.]), the RISA will send a letter to the [federal] sentencing court inquiring whether the court has any objections." (Doc. no. 7, Ex. 8, PS 5160.05(9)(4)(c)). Mr. Gaither informed Petitioner that in two previous cases the federal sentencing judge had responded to *nunc pro tunc* requests by stating that the court would not consider such a designation and, accordingly, Mr. Gaither refused to make an additional inquiry to the court on the subject. (Id.). Mr. Gaither advised that if Petitioner wished to pursue his request further he should address the sentencing court directly. (Id.).

After contacting Mr. Gaither, Petitioner pursued his request through the MCF grievance process, filing both an informal grievance and a formal grievance. (Doc. no. 1, pp.

5

16-18).  The grievance officer assigned to Petitioner's complaint stated that, due to the seriousness of the issue, she consulted with the BOP's oversight staff regarding the request. (Id. at 18).  The members of the oversight staff and the grievance officer concurred with the previous memorandum written to Petitioner by Ms. May, MCF records supervisor.  (Id.). The grievance officer's response reiterated the substance of Ms. May's previous letter, stating that Petitioner's request "MUST BE DECIDED by a Federal Judge" and that he should contact Mr. John Gaither to request a Barden procedure.  (Id. (emphasis in original)). Plaintiff appealed this decision to the Warden at MCF, who again reiterated that only a federal judge could authorize the relief he was seeking and that the burden was on Petitioner to initiate that procedure.  (Id.).

Petitioner appealed the Warden's decision to the Privatization Administrator at the BOP's Central Office, Mr. James E. Burrell.  (Id. at 20-21).  Mr. Burrell stated that with regard to Petitioner's request, the sentencing court was contacted but indicated that it would not consider his request.[6]  Furthermore, Mr. Burrell stated that a preference for a concurrent sentence by a state court has no effect upon the federal court and denied Petitioner's request, presumably because he determined that the federal sentencing court denied the request.  (Id. at 21).  Petitioner was again directed to contact the federal sentencing court directly regarding the issue.  Although Petitioner was advised that he could appeal to the Office of the General Counsel, it does not appear that Petitioner exercised this option before filing the present action.  (See doc. no. 7, Ex. 4, Ex. 5).

---

[6]As described *supra*, this statement is not accurate.  Mr. Gaither did not contact the sentencing court with regard to Petitioner's request because he had received unfavorable responses from the sentencing court in other cases.  (Doc. no. 6, p. 9, Ex. 7).

6

## II.  DISCUSSION

**A.    Exhaustion**

In all habeas cases a prisoner must exhaust administrative remedies or the federal court does not have jurisdiction to grant relief.  Skinner v. Wiley, 355 F.3d 1293, 1295 (11th Cir. 2004) (*per curiam*); Rodriguez v. Lamer, 60 F.3d 745, 747 (11th Cir. 1995) (noting requirement for exhausting administrative remedies with BOP prior to seeking § 2241 relief in federal court); Gonzalez v. United States, 959 F.2d 211, 212 (11th Cir. 1992) (*per curiam*) (recognizing that the BOP has established regulations that must be followed before seeking relief in federal court and ruling that "[e]xhaustion of administrative remedies is jurisdictional"); see also Fuller v. Rich, 11 F.3d 61, 62 (5th Cir. 1994) (*per curiam*) (noting exhaustion requirement in relation to bringing § 2241 petition); United States v. Gabor, 905 F.2d 76, 78 n.2 (5th Cir. 1990) (noting applicability of exhaustion requirement to claims for computation of sentence credit awards).  In this Circuit, even if an inmate claims that his release date has passed and he remains incarcerated, courts should enforce the exhaustion requirement:

> In February 1991 Gonzalez filed in the district court a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.  He asserted that because his presumptive release date had passed, he need not exhaust his administrative remedies before seeking relief from the district court.  Courts have original jurisdiction over imposition of a sentence.  The Bureau of Prisons is, however, responsible for computing that sentence and applying appropriate good time credit.  U.S. v. Martinez, 837 F.2d 861, 865-66 (9th Cir. 1988).  The Bureau of Prisons has established regulations that set forth the procedures that a prisoner must follow before seeking relief from a district court.  U.S. v. Lucas, 898 F.2d 1554, 1556 (11th Cir. 1990).  Exhaustion of administrative remedies is jurisdictional.  Id.

Gonzalez, 959 F.2d at 212.

7

In this case, the exhaustion issue is problematic. Petitioner exhausted every available administrative remedy except his final appeal to the Office of the General Counsel. Petitioner does not assert any justification for this failure. Under normal circumstances this would be fatal to a petitioner's claim.

However, even though Petitioner fails to argue that resort to his final administrative appeal would have been futile, based upon the responses Petitioner received at each level of the administrative process, the process was, by the BOP's own admission, futile. Those courts which apply a futility exception do so in only "extraordinary circumstances," and require the petitioner to "bear[] the burden of demonstrating the futility of administrative review." Jaimes v. United States, 168 Fed. Appx. 356, 359 (11th Cir. Feb. 21, 2006) (quoting Fuller, 11 F.3d at 62) (internal quotations omitted). In this case, in response to each of Petitioner's requests, he was advised that his request could only be granted by a federal judge, and if he wished to pursue the matter further he must address the federal sentencing court directly. Faulting Petitioner for following the BOP's instructions and seeking relief from the sentencing court would be unjust.

Furthermore, it is obvious from the responses Petitioner received at the various levels of the administrative process and from the BOP's agency materials, that Mr. Gaither, the RISA, was the individual solely responsible for processing Petitioner's request. (See doc. no. 1, pp. 12-21; doc. no. 6, Ex. 8, PS 5160.05(8) ("The [BOP]'s authority to designate a state institution for concurrent service of a federal sentence is delegated to [the RISAs] . . . [and] [t]he [RISA] is the final authority to determine" whether such a designation will be

8

granted.)).  Petitioner presented an issue which could not be resolved through the typical

BOP administrative process.  As such, the typical administrative process was, based upon

the responses received by Petitioner, futile.

In sum, Petitioner properly presented his request the RISA, who denied his request

and directed him to petition the sentencing court directly, as did each subsequent

administrative response which Petitioner received.  The Court will not dismiss Petitioner's

action for doing exactly what the BOP directed him to do, pursue his claim with the federal

sentencing court.

**B.      *Nunc Pro Tunc* Designation to State Custody**

As described above, the RISAs have the authority to designate a non-federal facility

for concurrent service of a federal sentence.  (Doc. no. 6, Ex. 8, PS 5160.05(7), (8)).[7]  The

RISA may make "[a] designation for concurrent service of sentence . . . when it is consistent

---

[7]This BOP asserts this authority based upon 18 U.S.C. § 3621(b), which states:

The Bureau of Prisons shall designate the place of the prisoner's
imprisonment.  The Bureau may designate any available penal or correctional
facility that meets minimum standards of health and habitability established
by the Bureau, whether maintained by the Federal Government or otherwise
and whether within or without the judicial district in which the person was
convicted, that the Bureau determines to be appropriate and suitable,
considering
    (1) the resources of the facility contemplated;
    (2) the nature and circumstances of the offense;
    (3) the history and characteristics of the prisoner;
    (4) any statement by the court that imposed the sentence
        (A) concerning the purposes for which the sentence to
        imprisonment was determined to be warranted; or
        (B) recommending a type of penal or correctional
        facility as appropriate; and
(5) any pertinent policy statement issued by the Sentencing
Commission pursuant to section 994(a)(2) of title 28.

9

with the intent of the federal sentencing court or the goals of the criminal justice system."
(Id.). The RISA has an obligation to look at the case and exercise discretion when deciding
whether the state prison should be designated as a place of federal confinement *nunc pro
tunc* when the federal judgment provides no indication of the sentencing court's intent on
this issue. McCarthy v. Doe, 146 F.3d 118, 123 (2d Cir. 1998); United States v. Evans, 159
F.3d 908, 911-12 (4th Cir. 1998); Barden, 921 F.2d at 482; Rodriguez v. Pitzer, 76 Fed.
Appx. 519, 520 (5th Cir. Aug. 7, 2003); Jones v. Winn, 13 Fed. Appx. 419, 421 (7th Cir.
June 29, 2001).[8] In this case the federal judgment provides no indication of the sentencing
court's intent on this issue, but Petitioner's request was denied because the RISA observed
that, in past cases, the federal sentencing judge had indicated that he was not receptive to
requests for *nunc pro tunc* designation to state custody. The only option provided by the
RISA was for Petitioner to seek the requested relief directly from the sentencing court.

Based upon the RISA's response and the BOP agency materials relating to the issue,
the RISA failed to properly consider Petitioner's request. Under PS 5160.04(9)(c), when an
inmate submits a request for *nunc pro tunc* designation and the RISA determines that a
designation may be appropriate, the RISA must then contact the federal sentencing court to
"inquir[e] whether the court has any objections." "If the court has indicated previously that
its language on judgments is sufficient for designation of a state institution for service of the

---

[8]The Eleventh Circuit has not addressed the issue. But see Richardson v. United
States, No. 4:02cv298, 2005 WL 2406039, *3 (N.D. Fla. Sept. 29, 2005) (holding that the
BOP has the authority exercise its discretion and designate a state facility as the place of
service for an inmate's federal sentence).

federal sentence, then no further letters need be written." (Doc. no. 6, Ex. 8, PS 5160.04(9)(e)).

In this case, based upon the RISA's response to Petitioner's request, it is clear that the request was denied without following the relevant agency guidelines. The RISA determined that, based upon the sentencing court's previous unfavorable responses in cases other than Petitioner's, no further inquiries would be made. Petitioner's request was denied on this basis, and the RISA suggested that Petitioner pursue the matter with the sentencing court. No further reasoning is contained within the RISA's response.

The RISA may not base his decision in this case solely upon an assumption of the sentencing court's views on the matter based upon unfavorable responses in past cases. Furthermore, if a response is solicited from the sentencing court, the RISA may not simply defer to the sentencing court's response and effectively "cede[] veto power over its decision to the federal sentencing court." Trowell v. Beeler, 135 Fed. Appx. 590, 595 (4th Cir. May 19, 2005). Directly deferring to the sentencing court on the matter and acting as a rubber stamp, would also, in effect, allow a sentencing court to improperly change an inmate's previously imposed sentence. See Richardson, 2005 WL 2406039, at *3 (citing 18 U.S.C. § 3582). The RISA must exercise his own independent judgment, considering 18 U.S.C. § 3621(b) and the BOP's interpretation of this statute set forth in PS 5160.05.[9] Trowell, 135 Fed. Appx. at 596.

---

[9]The factors to be considered under PS 5160.05(8)(a) include: "inmate discipline history, institutional adjustment, recommendations of the Wardens at the state and federal institutions, the recommendation of the prosecuting Assistant U.S. Attorney, intent of the federal sentencing court, if available, and any other pertinent information regarding the inmate."

In this case, Petitioner's request was not properly considered because the RISA, and other BOP administrators, improperly determined that the sentencing court alone had the discretion to determine whether a *nunc pro tunc* designation to state custody was appropriate, failed to properly solicit the views of the sentencing court,[10] and, based upon the lack of justification contained within the responses to Petitioner's request, failed to consider the pertinent information and apply the necessary factors for a *nunc pro tunc* designation to state custody. Discretion has been conferred solely to the BOP, and it may not avoid its responsibility in this regard. Barden, 921 F.2d at 478 (The BOP "ha[s] an obligation . . . to look at [Petitioner's] case and exercise the discretion the applicable statute grants the B[OP] to decide whether the state prison in which he served his sentence should be designated as a place of federal confinement *nunc pro tunc*."). Petitioner is entitled to have his request properly considered by the BOP.

In considering Petitioner's request for a *nunc pro tunc* designation to state custody, the RISA should consider the pertinent information listed at PS 5160.05(9)(4)(b). If, after considering the relevant information, the RISA determines that such a designation may be appropriate, the RISA should send a letter to the sentencing court, pursuant to PS 5160.05(9)(4)(c), inquiring whether the sentencing court has any objections.[11] If the

---

[10]As set forth above, "[i]f the court has indicated previously that its language on judgments is sufficient for designation of a state institution for service of the federal sentence, then no further letters need be written." (Doc. no. 6, Ex. 8, PS 5160.04(9)(4)(e)). However, in this case, it does not appear that the RISA's failure to solicit the sentencing court's views was based upon such an indication.

[11]If the exception set forth in PS 5160.05(9)(4)(e) is applicable, no letter need be written.

sentencing court expresses an opinion on the matter, this statement should be considered by the RISA but should not be considered determinative as to whether such a designation is made. The RISA should then weigh the factors set forth in PS 5160.05(8)(a) in conjunction with any response from the sentencing court. The Court makes no recommendation as to whether Petitioner may be entitled to a *nunc pro tunc* designation, simply that Petitioner is entitled to have this request properly considered. See Barden, 921 F.2d at 478 (court review of BOP's decision regarding a *nunc pro tunc* designation request is limited to abuse of discretion).

### IV.  CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the petition be **GRANTED** for the purpose of reconsideration of Petitioner's request for a *nunc pro tunc* designation to state custody in accordance with this Opinion, 18 U.S.C. § 3621(b), and PS 5160.05, and that Petitioner's "Motion to Request Case Status" be **DENIED** as **MOOT** (doc. no. 7). The Court also **REPORTS** and **RECOMMENDS** that, should the District Court adopt this recommendation as its own opinion, Respondent should inform the Court within **sixty (60) days** as to his compliance with this Opinion.

SO REPORTED and RECOMMENDED this 23rd day of March, 2007, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

13